UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DENNIS BRENNAN,

                          Plaintiff,

v.                                                          5:09-CV-1015
                                                            (GTS/ATB)

THE ROMAN CATHOLIC DIOCESE
OF SYRACUSE NEW YORK, INC.,
                                    Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

SCHLATHER STUMBAR PARKS & SALK, LLP    RAYMOND SCHLATHER, ESQ.
  Counsel for Plaintiff                             DIANE V.  BRUNS, ESQ.
200 East Buffalo Street, P.O. Box 353
Ithaca, NY 14851

SEARCY DENNEY SCAROLA                      JOHN SCAROLA, ESQ.
BARNHART & SHIPLEY, P.A.
  Co-Counsel for Plaintiff
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409

HANCOCK & ESTABROOK, LLP                  PAUL M. HANRAHAN, ESQ.
  Counsel for Defendant                            MAUREEN E. MANEY, ESQ.
1500 AXA Tower I, 100 Madison Street          JANET D. CALLAHAN, ESQ.
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

**<u>MEMORANDUM-DECISION and ORDER</u>**

Currently before the Court, in this tort and contract action filed by Dennis Brennan

("Plaintiff") against The Roman Catholic Diocese of Syracuse New York, Inc. ("Defendant") is

Defendant's motion for judgment on the pleadings regarding Plaintiff's Third, Fourth, and Fifth

Causes of Action.  (Dkt. No. 86, Attach. 23.)  For the reasons set forth below, Defendant's

motion is granted.

I.      **RELEVANT BACKGROUND**

A.      **Procedural History**

Because this Decision and Order is intended primarily for the review of the parties, the

Court will not recite this action's procedural history, which involves, *inter alia*, a transfer from

the Middle District of Florida, the striking of Plaintiff's unauthorized Amended Complaint, and

the granting of Plaintiff's motion for leave to file a Second Amended Complaint.  (*See generally*

Docket Sheet.)

B.      **Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Second Amended Complaint alleges as follows.

In the 1960's, Plaintiff was raped by Father Thomas Neary, a Roman Catholic priest and

employee of Defendant.  (Dkt. No. 73 [Plf.'s Second Am. Compl.], at ¶¶ 11, 12.)  In the summer

of 2001, Plaintiff remembered that he was raped by Father Neary.  (*Id.*)  In January 2002,

Plaintiff spoke with Bishop Costello, who promised Plaintiff that Defendant would "pay for

whatever help Plaintiff felt he needed."  (*Id.* at ¶ 14.)  In April 2002, Defendant began paying for

counseling that Plaintiff underwent with Dr. Mary D. Lutzo in St. Petersburg, Florida.  (*Id.* ¶ 15.)

Thereafter, the United States Conference of Catholic Bishops issued the "Charter for Protection

of Children and Young People ("Charter") and the "Essential Norms."  (*Id.* at ¶ 17.)  As part of

the Charter, each individual diocese in the United States, including Defendant, was mandated to,

among other things, "utilize individuals known as 'Victims Assistance Coordinators' and/or

'Diocesan Review Board' to assist all survivors of clergy abuse regardless of their age or when

the clerical sexual abuse occurred."  (*Id*. at ¶ 18.)

In response to the Charter, Defendant promulgated the "Policy Relating to Clergy Misconduct with Minors" ("the Policy"). (*Id*. at ¶ 19.) The Policy put in place a "Diocesan Assistance Coordinator" whose role is to provide "psychological assistance to those alleging abuse" and to act as the "advocate" for survivors of clergy abuse. (*Id*. at ¶ 20.) As employees of Defendant, Teresa Secreti and Nuala Collins act as diocesan victim advocates. (*Id*. at ¶¶ 22, 23.) Part of the responsibility of the victim advocates includes keeping the Bishop and/or members of the Diocesan Review Board informed of the status of the case the advocate is handling. (*Id*. at ¶ 25.)

On February 11, 2003, Plaintiff sent a letter to Bishop Costello detailing "the devastating effects that were the result of the rape by Father Neary." (*Id*. at ¶ 28.) In that letter, Plaintiff demanded a monetary settlement. (*Id*.) On February 18, 2003, Dr. Lutzo spoke with Ms. Secreti. (*Id*. at ¶ 29.) During this conversation, Ms. Secreti told Dr. Lutzo that, by making demands in a letter, Plaintiff "put it on a different level–a different arena, a different spot." (*Id*.) Ms. Secreti further stated that, while she did not "want to say we are going to stop counseling[,] . . . we are in a different place now than when we started." (*Id*.)

On March 17, 2003, Ms. Secreti wrote Plaintiff a letter advising him that Defendant had "put into place the office of the Assistance Coordinator that is designed to provide survivors of clerical sexual abuse with pastorial [sic] and therapeutic assistance." (*Id*. at ¶ 30.) In this letter, Ms. Secreti advised Plaintiff that, for Defendant to continue providing financial assistance for therapy, Plaintiff would have to sign a release of information. (*Id*.) Finally, Ms. Secreti stated that Defendant would authorize payment of Plaintiff's counseling through April 15, 2003, to review Dr. Lutzo's records. (*Id*.)

On April 11, 2003, Dr. Lutzo sent Defendant the information that Ms. Secreti had requested regarding Plaintiff.  (*Id*. at ¶ 34.)  On May 5, 2003, Plaintiff, through an attorney whom he had retained, sent Defendant a demand letter.  (*Id*. at 39.)  On June 30, 2003, Paul Hanrahan sent Plaintiff's attorney a response stating that, if Plaintiff was contemplating litigation, this would "bear significantly on the [Diocese's] position with respect to continuation of pastoral assistance."  (*Id*. at ¶ 40.)[1]

Between July 9, 2003, and November 30, 2008, Plaintiff received treatment from Dr. Lutzo on a number of occasions.  (*Id*. at ¶¶ 45-100.)  Plaintiff also received treatment from a psychiatrist, Dr. Walter Griffith, beginning in 2006.  (*Id*. at ¶ 63.)  In addition, starting on November 14, 2006, Plaintiff was seen on more than one occasion by a clinical psychologist, Dr. Karen Moorhead.  (*Id*. at ¶¶ 64, 70.)

In April 2007, after consulting with Ms. Secreti, Dr. Lutzo sent a therapeutic treatment plan (the "Plan") to Defendant.  (*Id*. at ¶ 78.)  The Plan, which was recommended by all of Plaintiff's health care providers, provided for a minimum six-week residential program for Plaintiff, followed by a minimum of two weeks of day programs.  (*Id*.)  The total cost of the Plan was $59,497.02.  (*Id*.)

In June 2007, Ms. Secreti informed Plaintiff that Defendant "was going to go with Dr. Moorhead's 'original recommendation' of continued out-patient therapy" in lieu of paying for the Plan.  (*Id*. at ¶¶ 84, 85.)  During the same month, Plaintiff spoke with Marti Zeitz, the Victim Assistance Coordinator for the Diocese of St. Petersburg, who referred Plaintiff to Timothy

---

[1]    Plaintiff took no further action until filing the current action on October 10, 2007. (*Id*. at ¶ 41.)

McGivern, a licensed mental health therapist.  (*Id*. at ¶¶ 47, 88.)  Plaintiff met with Mr. McGivern and began attending a men's group facilitated by Mr. McGivern.  (*Id*. at ¶ 88.)  On August 9, 2007, Defendant agreed to pay for counseling from Mr. McGivern.  (*Id*. at ¶ 92.)

In June 2008, Defendant stopped paying for all therapeutic and psychological care.  (*Id*. at ¶ 94.)  On October 27, 2008, Defendant informed Plaintiff that it would reimburse Dr. Lutzo for services through November 30, 2008.  (*Id*. at ¶ 100.)

Despite having to undergo repeated correspondence with Ms. Secreti and Bishop Costello regarding reimbursement for therapeutic expenses, Plaintiff was reimbursed for his medical expenses resulting from his treatment for all but $2,478.46 of his out-of-pocket expenses.  (*Id*. at ¶ 74.)

Based on these (and other) factual allegations, Plaintiff alleges that he has suffered and continues to suffer great pain of mind and body, shock, emotional distress, severe emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, loss of reputation and loss of enjoyment of life.  (*Id*. at ¶¶ 103, 104.) Plaintiff also alleges that he has suffered spiritually, was prevented and will continue to be prevented from performing daily activities, and has sustained and will continue to sustain loss of earnings and earning capacity.  (*Id.*)

As a result, Plaintiff asserts the following five claims: (1) a claim for a judgment, declaring that he is entitled to compensation for losses and expenses that he has incurred, and will continue to incur, related to his medical treatment; (2) a claim for breach of contract based on Defendant's refusal to pay for "reasonable and necessary therapeutic psychological expenses" despite the agreement entered into between the parties; (3) a claim for fraud based on false

statements made by employees of Defendant related to promises that the Victim Assistance Coordinator would act as Plaintiff's advocate, and that Defendant would "pay for all reasonable and necessary psychological and therapeutic care and treatment"; (4) a claim for negligence based on Defendant's failure "to discharge its duty to Plaintiff" to provide him with "appropriate and necessary therapeutic and psychological care" despite setting up the Charter, the Policy, and related policies; and (5) a claim for breach of a fiduciary duty based on Defendant causing Plaintiff to suffer emotional damages, and failing to pay for certain of his medical expenses.  (*Id.* at ¶¶ 105-140.)

### C.    Defendant's Motion

Generally, in support of its motion for judgment on the pleadings regarding Plaintiff's Third, Fourth, and Fifth Causes of Action pursuant to Fed. R. Civ. P. 12(c), Defendant argues as follows: (1) Plaintiff's claim for fraud must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), because he has failed to allege facts plausibly suggesting that Defendant engaged in conduct that constitutes an independent tort separate from Plaintiff's breach-of-contract claim; (2) Plaintiff's claim for negligence must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), because (a) a plaintiff cannot bring a negligence claim against a defendant who allegedly breaches a contract unless the negligence causes personal injury or damage to property outside the scope of the contract, and (b) in addition, the negligence claim is barred by the physical-impact rule under the circumstances; and (3) Plaintiff's claim for breach of fiduciary duty must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff has failed to allege facts plausibly suggesting the existence of a fiduciary relationship.  (*See generally* Dkt. No. 86, Attach.  23 [Def.'s Memo. of Law].)

Generally, in his response to Defendant's motion for judgment on the pleadings, Plaintiff argues as follows: (1) his claim for fraud should not be dismissed because he has alleged facts plausibly suggesting that Defendant induced him to agree to the contract by making commitments it never intended to keep, on which Plaintiff relied to his detriment; (2) his claim for breach of fiduciary duty should not be dismissed because he has alleged facts plausibly suggesting (a) the existence of a fiduciary relationship (through Defendant's undertaking of his needs), and (b) a breach of the fiduciary duties owed pursuant to that relationship; and (3) the physical-impact rule does not bar his negligence claim because the rule is inapplicable given that (a) Plaintiff suffered a "very substantial physical impact," and (b) the parties had a fiduciary relationship, rendering foreseeable the emotional harm that Plaintiff suffered as a result of Defendant's withdrawal of agreed upon counseling.  (*See generally* Dkt. No. 91, Attach. 3 [Plf.'s Response Memo. of Law].)

Generally, in its reply to Plaintiff's response, Defendant argues as follows: (1) the "undertaker's doctrine" on which Plaintiff relies does not apply because Plaintiff alleges Defendant offered to pay for treatment, not provide it; (2) Plaintiff's claim for fraud should be dismissed because, even assuming he has alleged facts separate from his breach-of-contract claim, those facts plausibly suggest that Defendant intended to keep its promise in paying for treatment; (3) Plaintiff's claim for breach of fiduciary duty should be dismissed because he has failed to allege facts plausibly suggesting the breach of a fiduciary relationship, and the cases on which Plaintiff relies are inapposite given that (a) one involves a counseling relationship, a role that Defendant never undertook, and (b) another involves inappropriate sexual contact, consideration of which is barred by the applicable statute of limitations; and (4) the physical-

impact rule bars Plaintiff's negligence claim because (a) the physical impact that Plaintiff relies

on in support of this claim is the alleged sexual abuse, which cannot form the basis for this

claim, and (b) no exception to the physical-impact rule exists for emotional damages suffered

from the breach of an agreement.  (*See generally* Dkt. No. 93 [Def.'s Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motion for Judgment on the Pleadings

"After the pleadings are closed . . . a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)

is governed by the same standard as is the standard governing a motion to dismiss for failure to

state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d

Cir. 1983).

It has long been understood that a defendant may base a motion to dismiss for failure to

state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge

to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal

cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16

(N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations

omitted].

Because such motions are often based on the first ground, a few words on that ground are

appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2) [emphasis added].  This tension between permitting a "short and plain

statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart

of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Fed. Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965 [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*. [citations omitted].[2]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for

---

[2]      It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.  *See Rusyniak,* 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*) [citations omitted].

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Ashcroft*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Ashcroft*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, Fed. R. Civ. P. 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56[, and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, such conversion is not necessary if the "matters" in question consist of (1) documents attached to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by

11

reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011).

## B.    Legal Standard Governing Choice of Law

When a case is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court must apply the substantive law of the transferor state. *Van Dusen v. Barrack*, 376 U.S. 612, 635-36 (1964); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243-44 (1981); *Hatfill v. Foster*, 415 F. Supp.2d 353, 364 (S.D.N.Y. 2006).  As a result, the Court will apply Florida law in its analysis of Plaintiff's claims.  The Court notes that both Defendant and Plaintiff cite Florida law in their memoranda of law.  (*See* Dkt. No. 86, Attach. 23; Dkt. No. 91, Attach. 3; Dkt. No. 93.)

## III.    ANALYSIS

### A.    Plaintiff's Claim of Negligence

As stated above in Part I.B. of this Decision and Order, Defendant seeks the dismissal of Plaintiff's claim of negligence.  Based on the current record, the Court accepts Defendant's argument for the dismissal of this claim because (1) the claim is essentially based on the "undertaker's doctrine,"[3] which is inapplicable under the circumstances, and (2) in any event, the claim is barred by the physical-impact rule.

With regard to Defendant's first argument, the "undertaker's doctrine" imposes a duty of care on "[o]ne who undertakes . . . to render *services* to another which he should recognize as

---

[3]    (*See* Dkt. No. 73, at ¶¶ 129 [Plf.'s Second Am. Compl., alleging that "the Diocese undertook to provide Plaintiff with the financial means to secure necessary therapeutic and psychological care . . . ."]; Dkt. No. 91, Attach. 3, at 2-4 [attaching pages "1" through "3" of Plf.'s Response Memo. of Law, invoking the "undertaker's doctrine" as basis for all of his tort claims].)

necessary for the protection of" the other's person or things.  *Restatement (Second) of Torts*, §§ 323, 324A (1965); *see also Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1186 (Fla. 2003) ("Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service–i.e., the 'undertaker'–thereby assumes a duty to act carefully and to not put others at an undue risk of harm.").  Here, Plaintiff's Second Amended Complaint does not allege facts plausibly suggesting that Defendant undertook to provide a *service* to Plaintiff.  Rather, Defendant "promised . . . Plaintiff that [Defendant] would *pay* for whatever help Plaintiff felt he needed."  (Dkt. No. 73 at ¶ 14 [emphasis added].)

In any event, even assuming that a promise to pay for "help" constitutes a *service*, the undertaker's doctrine imposes liability only for "physical harm."  *Restatement (Second) of Torts*, §§ 323, 324A (1965); *accord, Restatement (Second) of Torts*, § 324 (1965) (referencing "bodily harm").  Here, Plaintiff has failed to allege facts plausibly suggesting that he suffered a *physical* injury as a result of Defendant's non-payment.  *See Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d at 1186 (citing *Restatement [Second] of Torts*, noting the physical harm requirement).  Instead, Plaintiff alleges facts plausibly suggesting that he suffered only *emotional* injuries.  (Dkt. No. 73, at ¶ 104.)[4]

---

[4]    The Court notes that, in applying a somewhat analogous rule containing a "physical injury" requirement (namely, the Prison Litigation Reform Act), numerous courts have held that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not "physical injuries."  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Figueroa v. Wright*, 07-CV-1223, 2009 WL 674262, at *8, n.48 (N.D.N.Y. March 11, 2009) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.) (collecting 12 cases).

In addition, even assuming that the Complaint may be liberally construed as alleging a physical injury, the undertaker's doctrine imposes liability only for physical harm "resulting from his failure to exercise reasonable care to perform his undertaking." *Restatement (Second) of Torts*, §§ 323, 324A (1965); *accord, Restatement (Second) of Torts*, § 324 (1965) (imposing liability for bodily harm "*caused* . . . by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him") [emphasis added]. Here, Plaintiff has failed to allege facts plausibly suggesting that this "injury" was *caused by* Defendant's non-payment of certain medical expenses. To the contrary, Plaintiff's Complaint alleges facts plausibly suggesting that these injuries were caused by the rape that Plaintiff suffered in the 1960s.

Finally, the Court rejects Plaintiff's argument that he was placed in a worse position–i.e., that his risk of undue harm increased–by Defendant's alleged breach of its promise to pay certain medical expenses. This is because, among other things, Plaintiff acknowledges in his Complaint that (1) he had not sought treatment before Defendant agreed to "pay for whatever help Plaintiff felt he needed" in January 2002,[5] and (2) any claim based on the rape is barred by the statute of limitations.[6]

For each of these several alternative reasons, Plaintiff's negligence claim based on the undertaker's doctrine must be, and is, dismissed.

---

[5]    (Dkt. No. 73, at ¶¶ 12-14.)

[6]    (Dkt. No. 73, at ¶ 39.)

With regard to Defendant's second argument, Florida law holds that a plaintiff cannot bring a tort claim against a defendant who allegedly breaches a contract unless the tort causes injury "independent from acts that breached the contract." *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla. 1996). In addition, Florida applies the physical-impact rule that states that a plaintiff cannot recover damages for mental anguish absent the suffering of some physical injury. *See Gonzalez v. Metro Dade Cnty. Public Health Trust*, 651 So.2d 673, 674-75 (Fla. 1995); *RJ v. Humana of Fla., Inc.*, 652 So.2d 360, 362 (Fla. 1995).

Here, Plaintiff does not allege facts plausibly suggesting that he suffered any direct physical injury during or after the time Defendant allegedly promised to pay for his medical expenses. Instead, Plaintiff alleges (conclusorily) that he suffered, in pertinent part, "great pain of mind and body, shock, emotional distress, severe emotional distress, [and] physical manifestations of emotional distress." (Dkt. No. 73, at ¶¶ 103-104.) In addition, the Court rejects Plaintiff's argument that an exception should be made to the physical-impact rule because "[t]he only reasonable and logical injuries generally flowing from the breach of fiduciary duty as in this case are emotional in nature." (Dkt. No. 91, Attach. 3, at 21.) This case involves the nonpayment of expenses for which Defendant allegedly promised to reimburse Plaintiff. Based on Plaintiff's own allegations, the Court concludes that, at the time he commenced this action, Defendant had paid for almost all of his medical expenses. In other words, Plaintiff has not alleged facts plausibly suggesting that, based on Defendant's failure to reimburse Plaintiff for a limited number of his medical expenses, he suffered emotional distress akin to "the victim of a defamation or an invasion of privacy." *Gracey v. Eaker*, 837 So.2d 348, 356 (Fla. 2002).

15

Moreover, even if the Court were willing to make an exception to the physical-impact rule, the Court would find that Plaintiff has failed to allege facts plausibly suggesting that his emotional injuries were *caused by* Defendant's non-payment of certain of his medical expenses. Rather, again, Plaintiff's factual allegations plausibly suggest that Plaintiff's emotional injuries were caused by the rape that he suffered in the 1960s.

Finally, to the extent Plaintiff attempts to argue in his response that the rape from the 1960's was so severe that the physical-impact rule should be excused, the Court finds that his negligence claim does not pertain to that rape, and any cause of action for negligence arising from that rape is time-barred.

For all of these reasons, Plaintiff's negligence claim is dismissed.

**B.    Plaintiff's Claim of Fraud**

As stated above in Part I.B. of this Decision and Order, Defendant seeks the dismissal of Plaintiff's claim of fraud because (1) Plaintiff has failed to allege facts plausibly suggesting tortious conduct independent of the alleged acts that give rise to his breach-of-contract claim, and (2) even assuming that his fraud claim is not entirely based on the alleged contractual agreement between the parties, that conclusory claim is rendered implausible by his factual allegations (including his factual allegations plausibly suggesting that Defendant *intended* to keep its promise of paying for Plaintiff's reasonable medical treatment).  Based on the current record, the Court accepts Defendant's second argument.[7]

---

[7]    Implicit in the Court's conclusion that Plaintiff has failed to allege facts plausibly suggesting a claim for fraud is the conclusion that Plaintiff has failed to allege facts plausibly suggesting tortious conduct independent of the alleged acts that give rise to Plaintiff's breach-of-contract claim.  For this reason, the Court bases its dismissal of Plaintiff's claim of fraud on the alternative ground that the Court accepts Defendant's first argument.

"When the fraud relates to the performance of the contract, the economic loss doctrine

will limit the parties to their contractual remedies." *D & M Jupiter, Inc. v. Friedopfer*, 853

So.2d 485, 487 (Fla. Dist. Ct. App., 4th Dist. 2003); *see also Hotels of Key Largo, Inc. v. RHI

Hotels*, *Inc.*, 694 So.2d 74, 78 (Fla. 1997) ("Misrepresentations relating to the breaching party's

performance of a contract do not give rise to any independent cause of action in tort, [where]

such misrepresentations are interwoven and indistinct from the heart of the contractual

agreement.").  "However, when the fraud occurs in the connection with misrepresentations,

statements, or omissions which cause the complaining party to enter into a transaction, then such

fraud is fraud in the inducement and survives as an independent tort." *D & M Jupiter, Inc.*, 853

So.2d at 487-88.

"To state a cause of action for fraud in the inducement, a plaintiff must allege facts that,

if taken as true, would show [1] a false statement concerning a material fact, [2] knowledge by

the person making the statement that the representation is false, [3] intent by the person making

the statement that the representation induce another to act on it, and [4] reliance on the

representation to the injury of the other party." *W.R. Townsend Contracting, Inc. v. Jensen Civil

Const., Inc*., 728 So.2d 297, 304 (Fla. Dist. Ct. App., 1st Dist. 1999).  Allegations of fraud must

be pled with specificity.  *See Hembd v. Dauria*, 859 So.2d 1238, 1240 (Fla. Dist. Ct. App., 4th

Dist. 2003) (fraud must not be "flung into [a] case willy-nilly" by stating "legal conclusions");

*Robertson v. PHF Life Ins. Co.*, 702 So.2d 555, 556 (Fla. Dist. Ct. App., 1st Dist. 1997) (finding

that "allegations of fraud [were not] pled with specificity [and] . . . complaint fails to specifically

identify misrepresentations or omissions of fact, the time, place or manner in which they were

made, and how the representations were false and misleading"); *Daugharty v. Daugharty*, 456

So.2d 1271, 1274 (Fla. Dist. Ct. App., 1st Dist. 1984) ("It is axiomatic that the facts and circumstances constituting an alleged fraud must be pled with specificity and particularity, even in ordinary civil actions to recover damages.").

Here, with regard to his fraud claim, Plaintiff alleges as follows.

"During the . . . course of [his] dealings [with Defendant], [Defendant], acting through its employees and agents, made false statements of fact, known by [Defendant to be] false at the time these statements were made." (Dkt. No. 73 at ¶ 117.) "These false statements include[,] but are not limited to[, Defendant's statement] that the Victim Assistance Coordinator was to act as Plaintiff's advocate[, Defendant's statement] that it would find him a spiritual advisor[,] and [Defendant's statement] that it would pay for all reasonable and necessary psychological and therapeutic care and treatment, including out-of-pocket expense not covered by insurance arising from the horrific abuse he suffered at the hands of a priest when he was a child." (*Id.* at ¶ 118.) "As a part of these false statements and/or false assurances, [Defendant] promulgated the Policy, and related policies, and the Report[,] which fully embraced and implemented the standards as mandated by the Charter and the associated Essential Norms." (*Id.* at ¶ 119.) "[D]efendant also made false statements and/or false assurances to Plaintiff that its policies followed the standards set forth in the Charter, the Policy, related policies, the Report, and the Essential Norms." (*Id.*)

"The Charter and Essential Norms contain false statements of fact that [Defendant] knew were false and upon which it based its own policies." (*Id.*) "These statements . . . include . . . '[w]e commit ourselves to do all we can to heal the trauma that victims/survivors and their families are suffering . . . [,] Dioceses/eparchies will reach out to victims/survivors and their families and demonstrate a sincere commitment to their spiritual and emotional well-being[, and]

[t]he first obligation of the Church with regard to the victims is for healing and reconciliation.'"
(*Id.*)

"Plaintiff relied on these false statements and/or assurances to his detriment." (*Id.* at ¶ 120.) "At no time did [Defendant] intend to pay for all reasonable and necessary psychological and therapeutic expenses." (*Id.* at ¶ 121.) "At no time did [Defendant], acting through its employees and agents, intend to follow the language of the Charter, the Essential Norms, the Policy, the related policies[,] or the Report[,] or [Defendant's] own public pronouncements relating to providing survivors with psychological and therapeutic assistance." (*Id.* at ¶ 122.) "[Defendant] . . . knew that it was using the Charter, the Policy, the related policies, the Report, and the Essential Norms and its public statements and private promises to Plaintiff and his doctors as little more than a tool to create damage control in its effort to remain a credible, money-making religious institution." (*Id.* at ¶ 123.) "[Defendant] fraudulently denied Plaintiff care, including but not limited to [Defendant] falsely claiming that [it] was 'unable' to pay for the treatment Plaintiff needed." (*Id.* at ¶ 124.)

As an initial matter, the Court finds that the first public document issued by the Catholic Bishops and Defendant, the Charter, was not issued until June 2002. (Dkt. No. 93, at 34.) However, Plaintiff alleges that he entered into a contract with Defendant in April of 2002. (Dkt. No. 93 at ¶ 15.) Thus, to the extent Plaintiff relies on alleged false statements in the public documents issued by the Catholic Bishops and Defendant in support of his fraudulent inducement claim, his claim is dismissed. *See HTP, Ltd.*, 685 So.2d at 1239 ("Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract. It normally occurs prior to the contract and the standard of truthful

19

representation placed upon the defendant is not derived from the contract, . . . , i.e., whether the defendant was truthful during the formation of the contract is unrelated to the events giving rise to the breach of the contract.") (internal quotation marks and citations omitted).[8]

In addition, with regard to alleged statements and assurances that occurred prior to, or contemporaneous with, Plaintiff's entry into the alleged agreement, the Court finds that Plaintiff has failed to allege facts plausibly suggesting that Defendant intentionally made a false statement concerning a material fact.  For example, Plaintiff's allegation that Defendant did not intend to "provid[e] survivors with psychological and therapeutic assistance" is belied by Plaintiff's other allegations that, between April 2002 and November 2008, Defendant paid the majority of Plaintiff's psychological and therapeutic expenses.  In addition, and more importantly, Plaintiff alleges also that the first out-of-pocket expense that he incurred for which Defendant did not reimburse him was from August 18, 2005.  (Dkt. No. 73, at ¶ 72.)  In other words, the factual allegations in the Complaint plausibly suggest that, from April 2002 until August 14, 2005, Defendant paid all of Plaintiff's psychological and therapeutic expenses.  Thus, Plaintiff has failed to allege facts plausibly suggesting that, at the time Defendant promised to provide psychological and therapeutic assistance, it did not *intend* to do so.

Similarly, Plaintiff has failed to allege facts plausibly suggesting that Defendant promised him that it would pay for his psychological and therapeutic expenses in order to induce

---

[8]    *See also McMahan Sec. Co. L.P. v. FB Foods, Inc*., 04-CV-1791, 2006 WL 1822985, at *6 (M.D. Fla. June 29, 2006) ("The alleged misrepresentations which occurred subsequent to the execution of the Agreement go to the very heart of the parties' contractual agreement and do not constitute a tort that is independent from the underlying contract. Therefore, MSC's motion to dismiss FBF's claim for fraudulent inducement is granted as to those alleged misrepresentations which occurred subsequent to the execution of the Agreement because those inducements are barred by the economic loss rule.").

Plaintiff to enter into the alleged agreement. In particular, Plaintiff has failed to allege facts plausibly suggesting why Defendant allegedly misrepresented its intentions. For example, Plaintiff has not alleged that, prior to entering into the alleged agreement with Defendant, Defendant asked Plaintiff to give up something.

Furthermore, Plaintiff has failed to allege facts plausibly suggesting how he relied on Defendant's alleged false statements and/or assurances to his detriment. In his response, Plaintiff argues that his allegations plausibly suggest that he relied on Defendant's promise to pay for his psychological and therapeutic expenses in the following three respects: (1) he refrained from filing suit for the rape; (2) he relinquished control of his health care to Defendant; and (3) he waived his privacy rights and disclosed his confidential health care records to Defendant.

With regard to Plaintiff's first argument, he does not allege facts plausibly suggesting that, at the time he entered into the alleged agreement with Defendant, he gave up his right to sue for the rape based on Defendant's alleged fraudulent inducement. As an initial matter, it is difficult to conceive of how Plaintiff could have given up a right that he, in all likelihood, did not possess. (The Court notes that any cause of action arising from that rape appears to have been time barred.) In any event, Plaintiff alleges that, on February 11, 2003, he sent a demand letter to Bishop Costello requesting a monetary settlement for the injuries he suffered as a result of the rape. (Dkt. No. 73 at ¶ 28.)

With regard to Plaintiff's second argument, the factual allegations of Plaintiff's Complaint plausibly suggest that Plaintiff visited the doctors of his choosing. In other words, Plaintiff has failed to allege facts plausibly suggesting that he relinquished control of his health care to Defendant.

Finally, with regard to Plaintiff's third argument, Plaintiff has failed to allege facts plausibly suggesting that, at the time he entered into the alleged agreement with Defendant, based on Defendant's alleged fraudulent inducement, he disclosed his confidential health care records to Defendant. To the contrary, Plaintiff alleges facts plausibly suggesting that Defendant first requested to see his treatment records on March 17, 2003, after Plaintiff had undergone treatment paid for by Defendant for almost one year. (Dkt. No. 73 at ¶¶ 15, 30-31, 35.)

For each of these alternative reasons, Plaintiff's claim of fraud is dismissed.

## C.     Plaintiff's Claim of Breach of Fiduciary Duty

As stated above in Part I.B. of this Decision and Order, Defendant seeks the dismissal of Plaintiff's breach-of-fiduciary-duty claim because (1) the "undertaker's doctrine" on which Plaintiff relies is inapplicable, and (2) Plaintiff has failed to allege facts plausibly suggesting the existence of a fiduciary relationship. Based on the current record, the Court accepts Defendant's first argument for the reasons set forth in Part III.A. of this Decision and Order.

Furthermore, the Court accepts Defendant's second argument because Plaintiff has failed to allege facts plausibly suggesting a degree of dependency on his part necessary to infer a fiduciary relationship between the parties.[9] For example, Plaintiff has not alleged facts plausibly suggesting that, starting from the time he contacted Bishop Costello in January 2002, Defendant acted to advise, or protect him. Nor has Plaintiff alleged facts plausibly suggesting that Defendant ever provided health care services or counseling for Plaintiff.[10] Instead, Plaintiff

---

[9]     *See Orlinsky v. Patraka*, 971 So.2d 796, 800 (Fla. Dist. Ct. App., 3d Dist. 2007) (noting that, to establish a fiduciary relationship, "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party").

[10]    *See Doe v. Evans*, 814 So.2d 370, 374 (Fla. 2002) (stating that a fiduciary relationship exists between two persons when one of them is under a duty to act for or give

Case 5:09-cv-01015-GTS-ATB    Document 101    Filed 01/10/12    Page 23 of 25

alleges that Defendant agreed to pay for those services in an effort to help Plaintiff "in his quest for help, healing and reconciliation." (Dkt. No. 73 at ¶¶ 135-36.)

Moreover, even assuming that Plaintiff has alleged facts plausibly suggesting that Defendant acted to advise or protect him, and/or that he relied on Defendant's counseling, Plaintiff has not alleged facts plausibly suggesting that his contractual relationship with Defendant was somehow unique or distinct from the relationship with the Church possessed by other parishioners generally. Although it does not appear that any Florida court has decided this issue, a number of New York State courts have concluded that a unique or distinct relationship with the church, as opposed to a general relationship as a parishioner, is essential to a breach-of-fiduciary-duty claim. *See Bouchard v. New York Archdiocese*, 04-CV-9978, 2006 WL 1375232, at \*6 (S.D.N.Y. May 18, 2006) ("[E]ven if a fiduciary duty may exist between a religious body or cleric and a congregant in certain instances, in the case at bar Plaintiff has failed to make sufficient allegations to support the existence of such a relationship between Plaintiff and the Church Defendants. Plaintiff's allegations do not make out the existence of any sort of special relationship between the Church Defendants and Plaintiff beyond that general relationship between a church or religious body and a congregant. That general relationship is insufficient in law to support the finding of a fiduciary duty.").[11] Rather, Plaintiff merely alleges that he was

advice for the benefit of another upon matters within the scope of that relationship, and holding that, "when a church, through its clergy, holds itself out as qualified to engage in marital counseling and a counseling relationship arises, that relationship between the church and the counselee is one that may be characterized as fiduciary in nature").

[11]    *See also Doe v. Holy See*, 17 A.D.3d 793, 795 (N.Y. App. Div., 3d Dept. 2005) ("Where . . . a parishioner plaintiff seeks to establish the existence of a fiduciary relationship with an institutional church defendant, the plaintiff may not merely rely on the church's status in general, but must come forward with facts demonstrating that his or her relationship with the institution was somehow unique or distinct from the institution's relationship with other parishioners generally."); *Doe v. Holy See*, 6 A.D.3d 1228, 1229 (N.Y. App. Div., 4th Dept.

born, raised, and educated Roman Catholic, and was vulnerable when he entered into the alleged

contract with Defendant.  (Dkt. No. 73 at ¶¶ 135-36.)

Finally, to the extent Plaintiff's breach-of-fiduciary-duty claim is not otherwise defective,

it must be dismissed because Plaintiff has failed to allege facts plausibly suggesting how

Defendant breached the alleged fiduciary duty that it owes Plaintiff, other than by discontinuing

payment of his psychological and therapeutic expenses (which is the basis for Plaintiff's breach-

of-contract claim).  *See Eye Care Int'l, Inc. v. Underhill*, 92 F. Supp.2d 1310, 1315 (M.D. Fla.

2000) ("Where the facts surrounding a breach of contract action are indistinguishable from an

alleged tort, and where the alleged tort does not cause harm distinct from that caused by the

breach of contract, a plaintiff is barred from bringing a separate tort action."); *N. Am. Clearing,*

*Inc. v. Brokerage Computer Sys., Inc.*, 07-CV-1503, 2008 WL 341309, at *4 (M.D. Fla. Feb. 5,

2008) (dismissing plaintiff's claim for breach of fiduciary duty because it was "merely [a]

restate[ment] [of plaintiff's] breach of contract claim under a breach of fiduciary label").

More specifically, in support of his breach-of-fiduciary-duty claim, Plaintiff alleges as

follows: (1) Defendant "solicited [his] trust and confidence at a time when it knew or should

have known of his vulnerability, and [he] accepted this solicitation by reposing his trust in

[Defendant]; (2) "[a]s a result . . ., [Defendant] owes and continues to owe to . . . [P]laintiff a

fiduciary duty; and (3) "[Defendant] has breached the fiduciary duty that it owes to . . .

Plaintiff."  (Dkt. No. 73 at ¶¶ 136-138.)  Such allegations are conclusory.

---

2004) (holding that the plaintiff may not rely on the church's status in general to establish a
fiduciary relationship but must instead demonstrate that the relationship is unique or distinct
from other parishioners); *cf. Doe v. Norwich R.C. Diocesan Corp.*, 268 F. Supp.2d 139, 149-150
(D. Conn. 2003) (dismissing plaintiff's fiduciary duty claim under Connecticut law where he
alleged only that, because of the Diocese's status as a religious organization governing the
Roman Catholic Church, they occupied positions of trust and confidence as to him).

For each of these alternative reasons, Plaintiff's breach-of-fiduciary-duty claim is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion for judgment on the pleadings with regard to Plaintiff's Third, Fourth, and Fifth Causes of Action (Dkt. No. 86, Attach. 23) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Third, Fourth and Fifth Causes of Action are **<u>DISMISSED</u>**.

Dated: January 10, 2012
          Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge