UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DENNIS BRENNAN,

                Plaintiff,

v.                                              5:09-CV-1015
                                              (GTS/ATB)
THE ROMAN CATHOLIC DIOCESE
OF SYRACUSE NEW YORK, INC.,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SCHLATHER STUMBAR PARKS & SALK, LLP<br>  Counsel for Plaintiff<br>200 East Buffalo Street, P.O. Box 353<br>Ithaca, NY 14851 | RAYMOND SCHLATHER, ESQ.<br>DIANE V. BRUNS, ESQ. |
| SEARCY DENNEY SCAROLA<br>BARNHART & SHIPLEY, P.A.<br>  Co-Counsel for Plaintiff<br>2139 Palm Beach Lakes Boulevard<br>West Palm Beach, FL 33409 | JOHN SCAROLA, ESQ. |
| HANCOCK & ESTABROOK, LLP<br>  Counsel for Defendant<br>1500 AXA Tower I, 100 Madison Street<br>Syracuse, NY 13202 | PAUL M. HANRAHAN, ESQ.<br>MAUREEN E. MANEY, ESQ.<br>JANET D. CALLAHAN, ESQ. |

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this breach-of-contract action filed by Dennis Brennan

("Plaintiff") against The Roman Catholic Diocese of Syracuse New York, Inc. ("Defendant"), is

Plaintiff's motion for reconsideration of the Court's Decision and Order of August 14, 2013.

(Dkt. No. 132.) For the reasons set forth below, Plaintiff's motion is denied.

## I. RELEVANT BACKGROUND

### A. Procedural History

Because this Decision and Order is intended primarily for the review of the parties, the Court will not recite in detail this action's procedural history, except to note the following events: (1) on October 10, 2007, Plaintiff filed his original Complaint in this action; (2) on June 29, 2009, Plaintiff filed an unauthorized Amended Complaint, and on June 2, 2010, he filed a (revised) Second Amended Complaint; (3) on January 10, 2012, the Court granted Defendant's motion to dismiss certain of Plaintiff's claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), dismissing his Third, Fourth and Fifth Causes of Action (for fraud, negligence and breach of fiduciary duty), and leaving pending his First and Second Causes of Action (for declaratory judgment and breach of contract); (4) on July 26, 2012, Defendant filed a motion for summary judgment; (5) on August 10, 2012, Plaintiff moved for leave to file a Third Amended Complaint, and on August 27, 2012, he filed an opposition to Defendant's motion for summary judgment; (6) on September 10, 2012, Defendant filed an opposition to Plaintiff's motion to amend and a reply to Plaintiff's opposition; (7) on August 14, 2013, the Court issued a Decision and Order dismissing Plaintiff's First Cause of Action to the extent it was based on a tort theory of liability, and denying Plaintiff's motion to amend; (8) on August 28, 2013, Plaintiff filed a motion for reconsideration of the Court's Decision and Order of August 14, 2013; and (9) on September 16, 2013, Defendant filed an opposition to that motion. (*See generally* Docket Sheet.)

**B.     Parties' Briefing on Plaintiff's Motion for Reconsideration**

**1.     Plaintiff's Memorandum of Law in Chief**

Generally, in his motion for reconsideration, Plaintiff asserts two arguments.  First, he argues, the Court should reconsider its Decision and Order of August 14, 2013, dismissing the tort-based portion of his First Cause of Action for declaratory judgment (on the ground of the law-of-the-case doctrine, specifically, the Court's Decision and Order of January 10, 2012, dismissing all of Plaintiff's tort claims), because of an intervening change of controlling law (namely, the Florida Supreme Court's decision of March 13, 2013, in *Tiara Condo Assoc., Inc. v. Marsh & McLennan Co., Inc.,* 110 So.3d 399 [Fla. 2013], limiting the application of the economic-loss doctrine to products liability cases, and not permitting it to extend to other tort cases or to contract cases).  (Dkt. No. 132, Attach. 3, at 3-6 [attaching pages "2" through "5" of Plf.'s Memo. of Law].)

Second, he argues, the Court should reconsider its Decision and Order of August 14, 2013, denying Plaintiff's motion for leave to file a Third Amended Complaint on the ground that Plaintiff's claim of fraud in the inducement in his Second Amended Complaint had already been rejected on the merits by the Court in its Decision and Order of January 10, 2012, because of both clear error and manifest injustice, specifically, (a) the fact that the Second Amended Complaint never intended to assert a claim of fraud in the inducement, and that such a claim was dismissed based only on a pleading deficiency (and not on the merits), and (b) the fact that, while the (PDF-formatted) version of the proposed Third Amended Complaint that was docketed did not identify the proposed amendments through a red-lined process or equivalent means, the (Word-formatted) version of the proposed Third Amended Complaint that was submitted

contained proposed amendments that were "color-highlighted," demonstrating Plaintiff's good-faith effort to comply with Local Rule 7.1(a)(4) of the Local Rules of Practice for this Court. (*Id*. at 4, 6-8 [attaching pages "3," and "5" through "7," of Plf.'s Memo. of Law].)

### 2. Defendant's Opposition Memorandum of Law

Generally, in its response, Defendant asserts two arguments. First, it argues, the *Tiara Condo* decision issued by the Florida Supreme Court did not effect a change in controlling law relevant to this action, because (a) while it limited the economic loss rule to cases involving products liability, it did not change the long-standing common-law rule that a party cannot maintain causes of action for both breach of contract and tort where they arise out of the exact same conduct, or where the allegations supporting the claim of breach of contract contradict the tort claim, (b) Plaintiff's First Cause of Action for declaratory judgment is not based on either fraud or fraud in the inducement, and (c) his request to revisit the Court's dismissal of his fraud claim is untimely in that the dismissal occurred on January 10, 2012. (Dkt. No. 135, Attach. 1, at 4-8 [attaching pages "1" through "5" of Def.'s Opp'n Memo. of Law].)

Second, it argues, the standards of "clear error" and "manifest injustice" cited by Plaintiff do not warrant reconsideration, because (a) a side-by-side comparison of the Second Amended Complaint and the proposed Third Amended Complaint reveals that the Second Amended Complaint did, in fact, attempt to assert a claim of fraud in the inducement, and in any event such a claim cannot survive where, as here, it is based on the same facts as is a claim of breach of contract (and, even if it were not, it is unsupported by sufficient factual allegations), and (b) even if the Court were to excuse Plaintiff's failure to provide a red-lined copy of his proposed Third Amended Complaint, alternative grounds exist for denying Plaintiff's motion (specifically,

undue delay, lack of good cause, undue prejudice, and futility).  (*Id*. at 8-10 [attaching pages "5" through "7" of Def.'s Opp'n Memo. of Law].)

## II. LEGAL STANDARD

Local Rule 7.1(g) of the Local Rules of Practice for this Court provides as follows, in pertinent part:

> **Motion for Reconsideration.** Unless Fed. R. Civ. P. 60 otherwise governs, a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree. All motions for reconsideration shall conform with the requirements set forth in L.R. 7.1(a)(1) and (2). The briefing schedule and return date applicable to motions for reconsideration shall conform to L.R. 7.1(b)(2). . . . The Court will decide motions for reconsideration or reargument on submission of the papers, without oral argument, unless the Court directs otherwise.

N.D.N.Y. L.R. 7.1(g) (emphasis in original).

Generally, a court may justifiably reconsider its previous ruling if "[1] there has been an intervening change in controlling law, [2] there is new evidence, or [3] a need is shown to correct a clear error of law or to prevent manifest injustice."  *United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir.), *cert. denied*, 514, U.S. 1038 (1995); *accord*, *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.), *cert. denied*, 464 U.S. 864 (1983); 18B Wright & Miller, *Federal Practice and Procedure* § 4478, at 670-691 (2d ed. 2002 & Supp. 2009).  Such is the standard for motions for reconsideration filed under Local Rule 7.1(g) in this District.  *See, e.g., In re C-TC 9th Ave. P'ship*, 182 B.R. 1, 3 (N.D.N.Y.1995) (McAvoy, C.J.); *Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp .2d 223, 244 (N.D.N.Y.2002) (McCurn, S.J.); *Sumner v. McCall*, 103 F.Supp.2d 555, 558 (N.D.N.Y.2000) (Kahn, J.).

The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. Furthermore, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'. . . ." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

## III. ANALYSIS

### A. Reconsideration of Dismissal of Tort-Based Portion of Plaintiff's First Cause of Action (for Declaratory Judgment) Based on Purported Intervening Change of Controlling Law

After carefully considering the matter, the Court denies this part of Plaintiff's motion for several alternative reasons.

As an initial matter, the Court notes that this is not a typical "intervening change of controlling law" case, in which the law changes after the Court issues the decision challenged by the motion for reconsideration (or perhaps after the briefing was completed on the underlying motion). Rather, this is a case in which the decision challenged by the motion for reconsideration was preceded by both the issuance of an earlier decision addressing the issue *and* the occurrence of the purported change in controlling law. To the extent Plaintiff argues that he did not know the "error" in the Court's earlier decision was material until the Court issued its *second* decision, that argument is unpersuasive. Defendant implicitly, if not explicitly, relied on the economic-loss rule in its motion to dismiss; Plaintiff addressed that rule in his opposition memorandum of law; and the Court expressly relied on that rule in its Decision and Order of January 10, 2012. (*See, e.g.,* Dkt. No. 86, Attach. 23, at 5-10; Dkt. No. 91, Attach. 3, at 10-13;

Dkt. No. 101, at 17.) Simply stated, Plaintiff should have known that the "error" was material when the Florida Supreme Court issued its decision on March 13, 2013. As a result, he should have either (a) sought leave to file a belated motion for reconsideration at that time or (b) at the very least sought leave to file either a supplemental response or sur-reply at that time. His failure to do so has resulted in piecemeal briefing.

In any event, setting aside Plaintiff's motion practice, the Court finds that the change of law he references does not require reinstatement of his tort claims. The Court renders this finding for the first and second of the three reasons stated by Defendant in its opposition memorandum of law (the third reason having already been adopted in the preceding paragraph). *See, supra,* Part I.B.2. of this Decision and Order. The Court would add only the following analysis.

While parts of Plaintiff's motion request reconsideration of the dismissal of the *tort*-based portion of Plaintiff's First Cause of Action, other parts of Plaintiff's motion request reconsideration of the dismissal of only the *fraud*-based portion of Plaintiff's First Cause of Action. (Dkt. No. 132, Attach. 3, at 3-6 [attaching pages "2" through "5" of Plf.'s Memo. of Law].) Out of special solicitude to Plaintiff, the Court will liberally construe his motion as containing the former request.

Before the Court issued its Decision and Order of January 10, 2012, there were pending before it, *inter alia*, a claim of breach of contract and three tort claims: a claim of fraud (and/or fraud in the inducement), a claim of negligence, and a claim of breach of fiduciary duty. (Dkt.

7

No. 73, at ¶¶ 110-140; Dkt. No. 101, at 5-6.)[1]  In the Court's Decision and Order of January 10, 2012, Plaintiff's claim of fraud (and/or fraud in the inducement) was dismissed based on three alternative grounds: (1) the economic-loss rule, (2) the failure to allege tortious conduct independent of acts giving rise to a breach of contract, and (3) the failure to allege facts giving rise to a claim of fraud or fraud in the inducement (particularly, an intent to defaud).  (Dkt. No. 101, at 16-22.)  Plaintiff's claim of negligence was dismissed based on two alternative grounds: (1) the "undertaker's doctrine" and (2) the physical-impact rule.  (*Id*. at 12-16.)  Plaintiff's claim of breach of fiduciary duty was dismissed based on two alternative grounds: (1) the "undertaker's doctrine" and (2) the failure to allege a fiduciary relationship.  (*Id*. at 22-25.) Because of the alternative natures of these dismissals (and because two of the dismissals were in no way based on the economic-loss rule), none of the dismissals needs to be vacated due to the change in the economic-loss rule.

Granted, upon further reflection, some uncertainty may exist regarding the second reason for the dismissal of Plaintiff's claim of fraud or fraud in the inducement (i.e., the failure to allege tortious conduct independent of acts giving rise to a breach of contract), due the fact that Fed. R. Civ. P. 8(d)(2) generally allows for the pleading of alternative claims.

However, even if that second reason was without merit, an independent reason existed to dismiss that claim: Plaintiff's Second Amended Complaint fails to allege facts plausibly suggesting that Defendant intended to defraud Plaintiff when it made the representations in question; to the contrary, Plaintiff has alleged facts plausibly suggesting that Defendant *intended*

---

[1]  The Court notes that, in *Tiara*, there was no breach-of-contract claim still pending in the action when the Supreme Court answered the certified question.  *Tiara*, 110 So.3d at 400-01.

to keep its promise to pay for Plaintiff's reasonable medical treatment.  The Court reaches this conclusion for the reasons stated by Defendant in its memoranda of law on its prior motion to dismiss, as well as the additional reasons stated by the Court in its Decision and Order of January 10, 2012.  (Dkt. No. 86, Attach. 23, at 5-8; Dkt. No. 93, at 4-8; Dkt. No. 101, at 16-22; *see also* Dkt. No. 73, at ¶¶ 1-104, 110-27.)

As explained by Justice Barbara Pariente in her concurring decision in *Tiara*, the majority's decision did nothing to unsettle Florida's long-standing contract and tort law.  "For example, in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied . . . ."  *Tiara*, 110 So.3d at 408.  Elements of a claim of fraud in the inducement include, *inter alia*, (1) knowledge by the person making the statement that the representation is false and (2) intent by that person that the representation induce another to act on it.  (Dkt. No. 101, at 17.)

Finally, as yet another alternative ground for this part of the Court's decision, the Court finds that Plaintiff's First Cause of Action fails to allege facts plausibly suggesting that his request for declaratory relief is based on his claim of fraud or fraud in the inducement: rather, Plaintiff's First Cause of Action is expressly based on "the Diocese's promise to pay for his psychological treatment . . . [,] the Diocese['s] undertaking to perform, . . . the *Charter*[,] . . . *Policy* and *Report* of the Diocese, and related policies of the Diocese . . . ."  (Dkt. No. 73, at ¶¶ 105-09.)

B.  **Reconsideration of Denial of Motion to Amend Based on Purported Clear Error of Law and/or Manifest Injustice**

After carefully considering the matter, the Court denies this part of Plaintiff's motion for the reasons stated by Defendant in its opposition memorandum of law.  *See, supra,* Part I.B.2. of

this Decision and Order. The Court would add only the following four points.

First, fraud in the inducement was not the only claim that Plaintiff attempted to assert in his proposed Third Amended Complaint: he also attempted to assert, *inter alia*, a claim of Intentional Infliction of Emotional Distress. (Dkt. No. 115, Attach. 3, at ¶¶ 155-164 [Plf.'s Proposed Third Am. Compl.].) However, he does not discuss that claim in his motion for reconsideration, even though the motion seeks to vacate the *entire* denial of his motion to amend. (Dkt. No. 132, Attach. 3, at 6-8 [attaching pages "5" through "7" of Plf.'s Memo. of Law].) As a result, to the extent Plaintiff's motion for reconsideration requests leave to file his proposed claim of Intentional Infliction of Emotional Distress, that motion is denied.

Second, Plaintiff's current argument that he never intended to assert a claim of fraud in the inducement in his Second Amended Complaint is unpersuasive. In his opposition to Defendant's motion to dismiss his Amended Complaint, Plaintiff argued that he *was* attempting to assert a claim of fraud in the inducement. (*See, e.g.,* Dkt. No. 91, Attach. 3, at 6-8 ["Those promises were made before Dennis Brennan entered into the oral contract with the Diocese and *induced* him to enter into the contract. . . . [T]here was fraud on the part of the Diocese that began before the contract was formed, *induced* the Plaintiff to enter into the contract, and continued throughout its execution to *induce* the Plaintiff to continue to rely on the Defendant's contract promises. . . . It was that *fraud in the inducement* to enter into and maintain the contract . . . that caused the non-economic injuries which are the primary focus of Count 3."] [emphasis added].) Moreover, if Plaintiff never intended to assert a claim of fraud in the inducement in his Second Amended Complaint, then he should have moved for reconsideration of that dismissal on January 24, 2012 (i.e., 14 days after the Court's Decision and Order of January 10, 2012). He

did not do so.  Instead, he has made that argument more that one year and seven months later (i.e., in his motion for reconsideration of August 28, 2013).

Third, even assuming the truth of Plaintiff's intent argument, the denial of his motion to amend was also based on the fact that the deadline for such motions expired two years and two months before Plaintiff filed his motion, and Plaintiff failed in his motion to show good cause for his delay.  (Dkt. No. 131, at 11-12, 22, 25.)  In his motion for reconsideration, Plaintiff has not pointed to how the Court erred in basing its decision on that failure.  (*See generally* Dkt. No. 132, Attach. 3, at 6-8 [attaching pages "5" through "7" of Plf.'s Memo. of Law].)  To the extent he argues that sufficient discovery had not yet been produced to permit him to successfully plead that claim, Plaintiff has neither adduced evidence of that fact nor shown how that evidence was previously unavailable to him (i.e., when he made his motion to amend).

Fourth, in addition to being based on a lack of good cause, the denial of Plaintiff's motion to amend was based on his counsel's failure to identify the proposed changes through a red-lined method or other equivalent means.  (Dkt. No. 131, at 25.)  Regarding the good-faith defense proffered by Plaintiff, good faith is of little materiality to a violation of Local Rule 7.1(a)(4).  The issue, strictly stated, is willfulness.  *See* Fed. R. Civ. P. 83(a)(2).  Moreover, even if a movant nonwillfully fails to identify the changes in a proposed amended pleading, the Court is unable to identify those changes without guessing what they might be, at its own peril.  (At most, then, a movant's nonwillfulness might cause the Court to deny his motion merely without prejudice.)  In any event, there was no nonwillfulness here.  For the sake of brevity, the Court will not linger on his certification (upon admission to practice in this Court) that he read and understood the Court's Local Rules of Practice, or his decision to use highlighting (rather than

the "redline/strikeout" method in WordPerfect, the "Track Changes" method in Word, or a less-sophisticated method such as simple underlining or bold or italic typeface).  More important is the fact that Plaintiff's counsel could have noticed the error by opening the document in Portable Document Format ("PDF") before docketing it (in order to confirm that conversion had occurred).  Finally, setting aside the failure to identify the inserted words, Plaintiff's counsel failed to attempt to identify the deleted words through "strikeout" marks (or an equivalent method).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for reconsideration (Dkt. No. 132) is **<u>DENIED</u>**; and it is further

**ORDERED** that counsel are directed to appear on **DECEMBER 17, 2013** at 11:00 a.m. in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **DECEMBER 4, 2013**, and the parties are directed to engage in meaningful settlement negotiations prior to the pretrial conference.  In the event that counsel feel settlement is unlikely, counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week prior to the scheduled conference.

Dated: November 20, 2013
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge